UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BARBARA VENTERS, INDIVIDUALLY, AND AS MOTHER
AND NATURAL GUARDIAN
FOR MICHAEL VENTERS
AND LAUREN VENTERS,

                          Plaintiffs,

     -against-

LOUIS PUBLIC COMPANY LIMITED and
EF TRAVEL, INC.,

                        Defendants.
-----------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
TRIAL BY JURY**

**07 CIV. 7270**

    Plaintiffs BARBARA VENTERS, MICHAEL VENTERS, and LAUREN VENTERS,

complaining of the defendants herein, by her attorneys, LAW OFFICE OF TODD J. KROUNER,

respectfully alleges:

## INTRODUCTION

    1.    This is an action arising from the crash and subsequent sinking of the cruise ship

M/S Sea Diamond on or about April 5, 2007. The M/S Sea Diamond was operated by Louis

Public Company Limited (d/b/a Louis Hellenic Cruise Lines) ("Louis Cruise"), and had 1,547

passengers and crew onboard. Most of the 1,195 passengers were Americans and Canadians.

On April 5, 2007, at around 4 p.m., the ship ran aground on a well-marked volcanic reef east of

Nea Kameni, off of the Greek Island Santorini. On April 7, 2007, Greek authorities announced

that the Captain and a number of the crewmembers, were being officially charged for their

negligence. The charges include causing a shipwreck through negligence, breaching

international shipping safety regulations and polluting the environment. The Greek authorities

have also announced that the charges may be amended to include criminal charges. The Greek

authorities have noted that the underwater reef was well marked on available navigational equipment and maps.   Additionally, a number of the vessel's air-tight doors failed to function properly, allowing water to flood the cabins.  A representative from Louis Cruise has publicly admitted that the crash was the result of human error on the part of Louis Cruise personnel.

2.    Moreover as reported in the Wall Street Journal, on April 28, 2007, the eye-witness accounts have revealed that the evacuation was poorly planned and implemented. The passengers were forced to endure hours of chaos, fear and images of their death, and fear for health and safety of their loved ones.  Maritime safety guidelines generally call for a ship to be evacuated within one hour. Two of the passengers, a father and daughter (neither a party to this action), are presumed to have drowned and their bodies have not yet been found.  The survivors suffered an array, of injuries and losses, caused by the crash, and further compounded by the negligent evacuation, which left many without life jackets, instructions or the proper egress from the ship. Moreover, the mental anguish persists and the passengers are likely to suffer severely in the future from their mental trauma caused by this harrowing crash.

## THE PARTIES AND JURISDICTION

3.    Plaintiffs, Barbara Venters, Michael Venters, and Lauren Venters, are residents of Carroll County in the State of Georgia, and reside in the city of Carrollton.  Barbara Venters is a financial expert who works as a financial analyst and comptroller.  She was traveling with a tour group of approximately 13 persons, the majority of whom were young students from Carrollton Junior High School.   Plaintiff was traveling with her minor children Michael and Lauren. Michael is very interested in multimedia technology, while Lauren is involved in horseback riding and also enjoys cheerleading.

4.    Defendant Louis Cruise has its principal place of business in Nicosia, Greece.

5.    Louis Cruise engages in substantial and continuous business in the State of New York.

6.    Defendant EF Travel, Inc. (d/b/a/ EF Educational Tours) (hereinafter "EF Tours") is a Massachusetts corporation and is doing business throughout this Court's jurisdiction. Defendant EF Tours continuously and systematically conducts business in the State of New York.

7.    Jurisdiction with respect to defendant Louis Cruise is based upon this Court's diversity jurisdiction, 28 U.S.C. § 1332.

8.    Jurisdiction with respect to defendant EF Tours is based upon this Court's diversity jurisdiction, 28 U.S.C. § 1332.

9.    Jurisdiction is also based upon this Court's admiralty jurisdiction, 28 U.S.C. § 1333.

10.    The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

11.    Plaintiffs purchased an "escorted tour" package for travel to Greece, and within Greece, from defendant EF Tours.  Plaintiffs relied on EF Tours to escort them safely and to select reliable transportation and provide them with safe passage throughout the escorted tour.

12.    Upon information and belief, EF Tours is the world's largest private education travel company.

13.    Upon information and belief, EF Tours has over 26,000 employees, with offices and schools in over 50 countries, including the United States.

3

advertises in New York.

15.    EF Tours solicits and conducts business in New York through its interactive website, www.EFTours.com.

16.    EF Tours derives substantial revenue from the business it conducts in New York.

17.    EF Tours also regularly and systematically attends educational conferences in New York to meet with New York teachers, parents, and students to organize tours and to otherwise conduct business in New York.

18.    EF Tours, through its agents and/or employees, solicits business and regularly conducts business in the sate of New York.

19.    Plaintiffs relied on EF Tours, which promotes the value of its escorted tour services by including EF Tours' assurances that its tour group participants travel with security and knowledge that EF Tours is a tour expert.

20.    EF Tours has organized many escorted tours in New York on behalf of minor students.

21.    EF Tours holds itself as a specialist in safe travel ensures the safe care of minor children.

22.    Plaintiffs relied on EF Tours' assurances of its expertise and emphasis on safety in selecting common carrier operators and other services for its escorted tour group members. Plaintiffs were traveling as members of an EF Tours escorted tour throughout their stay in Greece and during this cruise EF Tours selected, purchased and held the tickets for each passenger, including plaintiffs, for the Louis Cruise on the subject vessel, the M/S Sea Diamond, up until a short time before each passenger, including plaintiffs, boarded the M/S Sea Diamond.

4

23.    On or about April 2, 2007, Plaintiffs boarded the M/S Sea Diamond at Piraeus, Greece, for what was scheduled to have been a four day cruise.  It was scheduled to visit a number of Greek islands, and scheduled to return to Piraeus, Greece, on April 6, 2007.

24.    Upon information and belief, Plaintiffs purchased insurance from EF Tours, for losses including but not limited to the following categories of damages: death and dismemberment, medical expenses, emergency evacuation, trip cancellation, post-departure interruption, delayed arrival, travel delay, baggage and personal effects and baggage delay.

25.    Upon information and belief, at all times herein mentioned, the defendant Louis Cruise owned the vessel the M/S Sea Diamond.

26.    At all times herein mentioned, the defendant Louis Cruise operated the M/S Sea Diamond.

27.    At all times herein mentioned, the defendant Louis Cruise controlled the M/S Sea Diamond.

28.    At all times herein mentioned, the defendant Louis Cruise managed the M/S Sea Diamond.

29.    At all times herein mentioned, the defendant Louis Cruise manned, equipped and operated the M/S Sea Diamond.

30.    Upon information and belief, at all times herein mentioned, the defendant Louis Cruise, owned, operated, controlled, equipped and managed the M/S Sea Diamond in its voyage from April 2, 2007 through April 7, 2007.

31.    On and prior to April 5, 2007, defendant Louis Cruise was a major cruise line that operated regularly scheduled passenger cruises and was required to maintain the working order

of the vessel and to insure compliance with all applicable safety codes, standards and
requirements. In addition, Louis Cruise was required to provide safety equipment and be able to
conduct an orderly and safe evacuation, if necessary, of the M/S Sea Diamond.

32.    On and prior to April 5, 2007, defendant Louis Cruise did business in New York
and sold its service to the citizens of New York and to the citizens of several other states.

33.    Louis Cruises is routinely booked by tour operators from the United States.
American constituted a large percentage of the passengers on Louis Cruises.

34.    Defendant Louis Cruise owned, serviced, maintained, repaired, inspected and
operated the subject vessel and its component parts and systems, including but not limited to,
navigational systems, control systems, safety doors, safety equipment and evacuation boats and
vessels.

35.    Defendant Louis Cruise also was responsible to provide training and instructions on
safety and evacuation procedures and methods. Defendant Louis Cruise was also obligated to
select, train, and supervise its Captain and crew.

36.    On April 5, 2007, plaintiffs were lawfully and properly passengers on board the
M/S Sea Diamond. As such, Louis Cruse owed her the highest duty of care.

37.    On April 5, 2007, the M/S Sea Diamond crashed into an underwater reef and began
to sink with some 1,547 passengers and crew on board. The evacuation of passengers took many
hours and was complicated and delayed by many negligent acts on the part of the Captain and
the crew. These failures lead to delays and personal injuries, the death of two passengers,
emotional distress, terror and mental anguish.

38.    At all times EF Tours knew or should have known of the poor condition, inadequate

6

equipment, poor safety record and negligent operation by Louis Cruise of the M/S Sea Diamond.

## FIRST CAUSE OF ACTION

### NEGLIGENCE OF DEFENDANT LOUIS CRUISE

39.    Plaintiffs repeat and reallege Paragraphs 1 through 38, above.

40.    The Defendant Louis Cruise, its agents, servants and employees were negligent in the navigating, operating and controlling of the M/S Sea Diamond.

41.    In derogation of the established maritime standards, regulations and safety rules Louis Cruise operated M/S Sea Diamond carelessly and negligently, and failed to avoid colliding with a reef, failed to operate the vessel in a safe and reasonable manner; failed to operate the vessel in a manner consistent with rules of navigation; failed to properly navigate the sea; failed to avoid impact with a well-marked reef.

42.    Defendant Louis Cruises also was negligent in its failure to organize and supervise an orderly evacuation of the passengers.  Louis Cruises failed to provide information on evacuations and safety measures prior to and during the evacuation and failed to properly distribute and make available required safety equipment like life jackets.  The evacuation was disorganized, disorderly and the Louis Cruise crewmembers were ill prepared and apparently lacked evacuation training.

43.    Defendant Louis Cruises' negligence caused Plaintiffs to suffer personal injuries, property loss, mental anguish, severe pain and suffering and Plaintiffs were severely and permanently injured, shocked, bruised, wounded and suffered great physical and mental pain and injury, was rendered sick, sore, lame and was otherwise injured, and may require future medical

7

care and/or treatment and may incur future medical expenses therefore.

44.    The Defendant, Louis Cruise, including their officers, agents, servants and/or employees as set forth herein, acted with willful misconduct and reckless disregard for the safety of the Plaintiffs; that said Defendant willfully, wantonly, knowingly and with reckless disregard for the safety of the passengers aboard the M/S Sea Diamond caused and permitted the subject vessel to crash; that the said Defendant knowingly and with reckless disregard for the safety of the passengers aboard M/S Sea Diamond caused and permitted unsafe, dangerous, defective and hazardous conditions; to exist aboard said vessel concerning which it had actual or constructive notice and warning, and nevertheless failed to timely remedy said conditions, but instead needlessly, knowingly, recklessly and wantonly risked the lives and safety of the fare paying passengers, despite the knowledge of the Defendant as to the probably horrible, devastating nature of the injuries, which would likely result from their willful, wanton, reckless and grossly negligent conduct, affecting such a large number of persons, including each and every passenger an crew member, and yet recklessly and with willful misconduct and gross negligence, and despite knowledge of earlier defective and other dangerous and hazardous conditions to exist, causing the injuries to the passengers and crew; and that the forgoing willful misconduct, wanton, reckless and grossly negligent acts and omissions of the Defendant Louis Cruise requires, justifies and merits the award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

## NEGLIGENCE OF DEFENDANT EF TOURS

45.    Plaintiffs repeat and reallege Paragraphs 1 through 44, above.

46.    EF Tours was negligent in it selection, hiring and referral of Louis Cruise as a

cruise line for its escorted tour members. EF Tours was negligent in failing to provide, hire, select and supervise safe passage and for its failure to properly escort the Plaintiffs in during the tour.

47.   EF Tours knew, or should have known, that Louis Cruise negligently operated to the M/S Sea Diamond.  Upon information and belief, EF Tours knew or should have known that Louis Cruise had violated safety standards on earlier occasions and lacked the requisite navigational skills and failed to take all required safety precautions.

48.   Plaintiffs relied on EF Tours to select, screen and hire cruise line operators to insure her safe passage.

49.   Defendant EF Tours was negligent in its failure to provide and contract for safe passage.

50.   Defendant EF Tours also was negligent in its failure to organize and supervise an orderly evacuation of its escorted guests.  EF Tours failed to provide information on evacuations and safety measures prior to and during the evacuation.

51.   EF Tours alone knew of the identity of the cruise operator prior to the cruise.  EF Tours owed Plaintiffs a duty of ordinary care in selecting, hiring and referring a cruise line to the Plaintiffs. By reason of the foregoing, Defendant EF Tours breached its duty of care to the Plaintiffs.

52.   Defendant EF Tours' negligence caused the Plaintiffs to suffer personal injuries, property loss, mental anguish, severe pain and suffering and Plaintiffs were severely and permanently injured, shocked, bruised, wounded and suffered great physical and mental pain and injury, were rendered sick, sore, lame and was otherwise injured, and may require future medical

9

care and/or treatment and may incur future medical expenses therefore.

## THIRD CAUSE OF ACTION

### BREACH OF CONTRACT AGAINST DEFENDANT EF TOURS

53. Plaintiffs repeat and reallege paragraphs 1 through 52, above.

54. Upon information and belief, Plaintiffs entered into a contractual agreement with EF Tours and purchased an insurance policy from EF Tours. EF Tours charged the Plaintiffs a premium and agreed to provide insurance to the Plaintiffs. The purchased insurance coverage included insurance for losses including but not limited to, the following categories of damages: death and dismemberment, medical expenses, emergency evacuation, trip cancellation, post-departure interruption, delayed arrival, travel delay, baggage and personal effects and baggage delay.

55. EF Tours charged the Plaintiffs a premium for the insurance coverage. EF Tours has breached the agreement by failing to make payment pursuant to its insurance coverage.

## FOURTH CAUSE OF ACTION

### DECEPTIVE ACTS AND PRACTICES (GBL § 349) AGAINST DEFENDANT EF TOURS

56. Plaintiffs reallege paragraphs 1 though 55, above.

57. Defendant EF Tours represented to the consumers in the metropolitan New York region that it provided escorted tours that would provide safe and reliable escorted travel throughout the world. EF Tours represented to the public that it was an expert in foreign escorted tours. In fact, it omitted to inform the consuming public in general, and Plaintiffs in particular, that it did not investigate the safety records or practice of the cruise lines it selected,

10

hired and referred the Plaintiffs to and such material omissions by defendant EF Tours constitute deceptive acts and practices within the meaning of New York General Business Law § 349.

58.    EF Tours also represented it provided insurance and travel protection for an additional fee.  Upon information and belief, EF Tours has now refused to provide the agreed upon coverage for which it has charged a premium.

59.    Such deceptive acts and practices resulted in injury to Plaintiffs' person and property, and entitle them compensatory damages, treble damages and an award of reasonable attorney's fees.

60.    Since April 5, 2007, EF Tours continues to commit the aforesaid deceptive acts and practices.

61.    On its web page, EF Tours stresses safety and excellent loss coverage as its chief selling points. See www.EFTours.com under the "Why Choose EF" tab.

[THIS SPACE LEFT INTENTIONALLY BLANK]

11

WHEREFORE, Plaintiffs demand judgment against the defendants. Plaintiffs demand judgment against defendant Louis Cruise on the First Cause of Action for compensatory and punitive damages in such amounts as a jury may find fair, reasonable and just; and Plaintiffs demand judgment against defendant EF Tours, on the Second and Third Causes of Action in such amounts as a jury may find fair, reasonable and just; and Plaintiffs demand judgment against defendant EF Tours on the Fourth Cause of Action for (a) compensatory damages to the extent permitted by law; (b) reasonable attorney's fees; and (c) an injunction to terminate EF Tours deceptive acts or practices, all together with interest, costs and disbursements of this action.

Dated: Chappaqua, New York
     August 14, 2007

LAW OFFICE OF TODD J. KROUNER

By: _____
    Todd J. Krouner (TK0308)
    Jacqueline M. James (JJ1845)
    Attorneys for Plaintiffs
    93 North Greeley Avenue, Suite 100
    Chappaqua, New York, 10514
    (914) 238-5800

12